No. 26-1305

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF CALIFORNIA,

*Petitioner*,

v.

PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, PAUL ROBERTI, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE PIPELINE AND HAZARDOUS MATERIALS SAFETY ADMINISTRATION, UNITED STATES DEPARTMENT OF TRANSPORTATION, AND SEAN DUFFY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF TRANSPORTATION,

*Respondents*.

## PETITION FOR REVIEW

ROB BONTA
*Attorney General of California*
DEBORAH M. SMITH
*Senior Assistant Attorney General*
DAVID ZAFT
*Supervising Deputy Attorney General*
RAFAEL J. HURTADO
*Deputy Attorney General*
STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 321-5780
Fax: (916) 732-7920
Rafael.Hurtado@doj.ca.gov
*Attorneys for Petitioner*

October 29, 2026

## PETITION FOR REVIEW

Pursuant to 49 U.S.C. Section 5127(a), Federal Rule of Appellate Procedure 15, and District of Columbia Circuit Rule 15, the State of California, by and through Attorney General Rob Bonta, hereby petitions the Court for review of an order issued by the Pipeline and Hazardous Materials Safety Administration (PHMSA), an agency within the United States Department of Transportation.

This Petition challenges as unlawful PHMSA's September 10, 2026 administrative determination of preemption (Determination), designated Docket Number PHMSA–2025–0776; PD-41(R). Hazardous Materials: California's Reusability Mandate for Propane Cylinders, 91 Fed. Reg. 57,684 (Sept. 10, 2026). The Determination was made in response to an application by Worthington Enterprises, Inc. for a "determination as to whether [The Federal Hazardous Materials Transportation Act (HMTA)], 49 U.S.C. 5101 et seq., and the Hazardous Materials Regulations (HMR), 49 CFR parts 171–80, preempts a new reusability mandate for propane cylinders in California Public Resources Code, Cal. Pub. Res. Code §§ 42395–42395.2." *Id.* PHMSA determined that the HMTA preempts California Public Resources Code, Sections 42395-42395.2, and published its determination in the Federal Register. *Id.* The Determination is attached to this Petition.

Pursuant to 49 U.S.C. Section 5127(a), a final action taken by PHMSA under the HMTA may be challenged by filing a Petition for Review directly in the United States Court of Appeals for the District of Columbia, and must be filed within 60 days after the agency action becomes final. Accordingly, Petitioner hereby timely and properly seeks review of PHMSA's Determination in this Court.

Dated: October 29, 2026

Respectfully submitted,

*s/ Rafael J. Hurtado*

Rob Bonta
*Attorney General of California*
Deborah M. Smith
*Senior Assistant Attorney General*
David Zaft
*Supervising Deputy Attorney General*
RAFAEL J. HURTADO
*Deputy Attorney General*

essential for ensuring that consumers have access to the information needed to make well-informed tire purchase decisions. NHTSA uses the submitted information to maintain public databases, ensure accuracy of consumer disclosures, and perform compliance and enforcement activities.

*60-Day Notice:* A **Federal Register** Notice with a 60-day comment period soliciting public comments on the following information collection was published on April 8, 2026 (91 FR 17828). No comments were received.

*Affected Public:* Passenger car tire manufacturers and brand name owners offering passenger car tires for sale in the United States.

*Estimated Number of Respondents:* Approximately 160 tire brand names are subject to UTQGS requirements. However, due to industry consolidation, manufacturers typically submit required information on behalf of multiple brand names. NHTSA estimates that approximately 45 tire manufacturers serve as the actual respondents submitting information annually.

*Frequency:* Intermittent. Sidewall molding and paper labeling: Continuous/ongoing. Brochure preparation/updating: Annual. Annual Reporting to NHTSA: Annual, with electronic submissions accepted.

*Estimated Number of Responses:* 45.

*Estimated Total Annual Burden Hours:* 69,888 hours.

| Burden activity | Annual hours |
|---|---|
| Affixing paper tread labels to tires | 52,778 |
| Engraving tire molds (sidewall grading) | 10,000 |
| Preparing or updating brochures | 6,750 |
| Compiling & Submitting information to NHTSA | 360 |
| Total | 69,888 |

*Estimated Total Annual Burden Cost:* Approximately $35.1 million.

NHTSA estimates total annual non-labor respondent costs of approximately $35.1 million, primarily attributable to testing, printing of paper tread labels, and printing of consumer information brochures. The largest portion of the cost burden imposed by the UTQGS program arises from the testing necessary to determine the grades that should be assigned to the tires. The cost burden is broken into its components as follows.

ANNUAL NON-LABOR COST COMPONENTS

| Cost component | Annual cost |
|---|---|
| Treadwear testing | $2,520,000 |
| Traction testing | 157,500 |
| Temperature testing | 778,610 |
| Printing paper tread labels | 28,500,000 |
| Printing brochures | 3,163,500 |
| Total | 35,120,000 |

*Public Comments Invited:* You are asked to comment on any aspects of this information collection, including (a) whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (b) the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used; (c) ways to enhance the quality, utility and clarity of the information to be collected; and (d) ways to minimize the burden of the collection of information on respondents, including the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

*Authority:* The Paperwork Reduction Act of 1995; 44 U.S.C. Chapter 35, as amended; 49 CFR 1.49; and DOT Order 1351.29A.

**Shashi Kuppa,**

*Acting Associate Administrator, Rulemaking.*

[FR Doc. 2026–18467 Filed 9–9–26; 8:45 am]

**BILLING CODE 4910–59–P**

## DEPARTMENT OF TRANSPORTATION

### Pipeline and Hazardous Materials Safety Administration

**[Docket No. PHMSA–2025–0776; PD–41(R)]**

### Hazardous Materials: California's Reusability Mandate for Propane Cylinders

**AGENCY:** Pipeline and Hazardous Materials Safety Administration (PHMSA), DOT.

**ACTION:** Notice of administrative determination of preemption.

**SUMMARY:** The Federal Hazardous Materials Transportation Act (HMTA), 49 U.S.C. 5101 *et seq.,* preempts California's reusability mandate for propane cylinders in California Public Resources Code, Sections 42395–42395.2. The reusability mandate imposes localized design and manufacturing requirements on a container that is represented, marked, certified, or sold as qualified for use in the transportation of a hazardous material—specifically, propane—that are not substantively the same as the requirements in the HMR. The reusability mandate is also an obstacle to accomplishing and carrying out the HMTA. By banning a federally authorized, safety-compliant packaging based on localized waste management preferences, California creates a fragmented regulatory patchwork that undermines the primacy and uniformity of the Federal transportation safety framework.

**FOR FURTHER INFORMATION CONTACT:** Samantha Vrscak, Office of Chief Counsel, Pipeline and Hazardous Materials Safety Administration, U.S. Department of Transportation, 1200 New Jersey Avenue SE, Washington, DC 20590; Telephone No. 202–366–4400; Facsimile No. 202–366–7041.

**SUPPLEMENTARY INFORMATION:**

## I. Background

Worthington Enterprises, Inc. (Worthington) applied for a determination as to whether the HMTA, 49 U.S.C. 5101 *et seq.,* and the Hazardous Materials Regulations (HMR), 49 CFR parts 171–80, preempts a new reusability mandate for propane cylinders in California Public Resources Code, Cal. Pub. Res. Code §§ 42395–42395.2. The reusability mandate generally provides that, on or after January 1, 2028, all propane cylinders sold or offered for sale in California must be reusable or refillable. The reusability mandate does not apply to cylinders customarily designed for use in the construction industry with a capacity of less than 15 ounces, to cylinders with an overall product height-to-width ratio of 3.55 to 1 or greater, or to cylinders offered to a State or local government agency for purchase pursuant to the U.S. General Services Administration's State and Local Disaster Purchasing Program or its successor. *See* Cal. Pub. Res. Code §§ 42395–42395.1.

Worthington designs and manufactures certain non-reusable and non-refillable propane cylinders that are subject to the California reusability mandate. These cylinders are also subject to the requirements in the HMR for specification 39 non-reusable (non-refillable) cylinders (DOT–39 cylinders).[1] A cylinder is a type of

[1] Under the HMR, a DOT–39 cylinder is a non-reusable and non-refillable seamless, welded, or brazed cylinder made of steel or aluminum with size limitations dependent on the service pressure

''packaging'' or ''container'' regulated under the HMR.[2] Section 178.65 of the HMR prescribes detailed design and manufacturing requirements for the non-reusable and non-refillable DOT–39 cylinders that are the subject of this preemption determination. DOT–39 cylinders are also authorized packagings that can be used to transport propane, a Division 2.1 flammable gas, in commerce.[3]

Citing the Federal preemption provision in the HMTA, Worthington filed an application on August 18, 2025 asking PHMSA to issue an administrative determination that the California reusability mandate is unlawful for two reasons: (1) because it is not substantively the same as Federal regulations governing the design, manufacture, and maintenance of cylinders used in transportation of hazardous materials; and (2) because it is an obstacle to the Federal hazardous material transportation legal and regulatory regime.

PHMSA published notice of Worthington's application in the **Federal Register** on January 9, 2026 (Docket No. PHMSA–2025–0776) and invited interested parties to submit comments.[4] The initial comment period closed on February 9, 2026, followed by a rebuttal comment period that remained open until March 10, 2026. PHMSA received a total of seventeen comments, including a Congressional letter, in response to the notice. These comments are summarized in Part IV below.

## II. Preemption Under Federal Hazardous Material Transportation Law

The HMTA contains an express preemption provision in 49 U.S.C. 5125. That provision is intended to ensure uniformity in the regulation of hazardous materials transportation.[5] Section 5125(a) authorizes two forms of preemption that have long been recognized under Federal law. The first is commonly known as dual compliance preemption. The second is commonly known as obstacle preemption.[6] In addition, Section 5125(b)(1) preempts State laws about certain subjects that are not ''substantively the same'' as Federal law.

### *Dual Compliance and Obstacle Preemption*

Section 5125(a) provides that a requirement of a State, political subdivision of a State, or Indian tribe is preempted—unless the non-Federal requirement is authorized by another Federal law or the U.S Department of Transportation (Department or DOT) grants a waiver of preemption under Section 5125(e)—if:

(1) complying with a requirement of the State, political subdivision, or tribe and a requirement of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security is not possible; or

(2) the requirement of the State, political subdivision, or tribe, as applied or enforced, is an obstacle to accomplishing and carrying out this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security.

### *Covered Subject Preemption*

Section 5125(b)(1) further provides that a non-Federal requirement concerning any of the following subjects is preempted—unless authorized by another Federal law or DOT grants a waiver of preemption—when the non-Federal requirement is not ''substantively the same'' as a provision of Federal hazardous material transportation law, a regulation prescribed under that law, or a hazardous materials security regulation or directive issued by the Department of Homeland Security:

(A) the designation, description, and classification of hazardous material.

(B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.

(C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents.

(D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident.

(E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.[7]

### *Administrative Preemption Determinations*

The HMTA allows any person (including a State, political subdivision of a State, or Indian tribe) directly affected by a requirement of a State, political subdivision or Indian tribe to apply to the Secretary of Transportation for an administrative preemption determination.[8] The Secretary of Transportation has delegated his authority to make such determinations to PHMSA, except with respect to matters concerning highway routing (which have been delegated to the Federal Motor Carrier Safety Administration).[9] Alternatively, a person may seek a judicial decision on preemption from a court of competent jurisdiction.[10] However, once an application is filed with PHMSA, an applicant may not seek judicial relief with respect to the same, or substantially the same issue, until the agency has taken final action on the application or 180 days after filing the application.[11]

Section 5125(d)(1) requires the Secretary to publish notice of an application for a preemption determination in the **Federal Register**. Following the receipt and consideration

and requirements for manufacturing, cylinder wall thickness, openings and attachments on the cylinder head, and pressure and flattening testing. *See* 49 CFR 178.65. Subsection 178.65(i) requires specific markings on the cylinder, such as the specification number, service and test pressure, the registration number of the manufacturer, date of manufacture, ''NRC'' for ''non-reusable container,'' and the statement, ''Federal law forbids transportation if refilled'' with a statement of the maximum civil and criminal penalties applicable at the date of manufacture.

[2] *See* 49 U.S.C. 5103(b)(1)(A)(iii); 49 CFR 171.8 (''packaging'' is defined as ''a receptacle and any other components or materials necessary for the receptacle to perform its containment function in conformance with the minimum packing requirements of [the HMR]'' and ''package'' is defined as ''a packaging plus its contents''); 49 CFR 178.35 (general requirements for DOT specification cylinders); 49 CFR 178.65 (requirements for DOT–39 non-reusable (non-refillable) cylinders).

[3] *See* 49 CFR 172.101 (Hazardous Materials Table); 49 CFR 173.301(a)(1) (general requirements for shipment of compressed gases and other hazardous materials in cylinders; includes DOT–39 cylinders as an authorized packaging for compressed gases); and § 173.304 (requirements for filling of cylinders with liquefied compressed gases).

[4] 91 FR 1029 (Jan. 9, 2026).

[5] S. Rep. No. 1192, 93rd Cong. 2nd Sess. 37 (1974) (stating that the Senate Commerce Committee ''endorse[d] the principle of preemption in order to preclude a multiplicity of State and local regulations and the potential for varying as well as conflicting regulations in the area of hazardous materials transportation''); *Colorado Pub. Util. Comm'n* v. *Harmon,* 951 F.2d 1571, 1575 (10th Cir. 1991) (characterizing uniformity as the ''linchpin'' in the design of the Federal laws governing the transportation of hazardous materials).

[6] *See Hines* v. *Davidowitz,* 312 U.S. 52 (1941); *Florida Lime & Avocado Growers, Inc.* v. *Paul,* 373 U.S. 132 (1963); *Ray* v. *Atlantic Richfield Co.,* 435 U.S. 151 (1978).

[7] To be ''substantively the same,'' the non-Federal requirement must conform ''in every significant respect to the Federal requirement. Editorial and other similar *de minimis* changes are permitted.'' 49 CFR 107.202(d).

[8] 49 U.S.C. 5125(d)(1).

[9] 49 CFR 1.97(b).

[10] 49 U.S.C. 5125(d)(3).

[11] 49 U.S.C. 5125(d)(1); 49 CFR 107.203(d).

of written comments, PHMSA publishes its determination in the **Federal Register**.[12]

In making preemption determinations under 49 U.S.C. 5125(d), PHMSA is guided by the principles and policies set forth in Executive Order No. 13132 (E.O. 13132) and the President's May 20, 2009 Memorandum on Preemption.[13] Section 4(a) of E.O. 13132 authorizes preemption of State laws only when a statute contains an express preemption provision, there is other clear evidence Congress intended to preempt State law, or the exercise of State authority directly conflicts with the exercise of Federal authority. Here, Section 5125 contains express preemption provisions. The President's May 20, 2009 Memorandum sets forth the policy "that preemption of State law by executive departments and agencies should be undertaken only with full consideration of the legitimate prerogatives of the States and with a sufficient legal basis for preemption." [14]

## III. The California Reusability Mandate for Propane Cylinders

As enacted by Section 42395.1 of the California Public Resources Code, "[o]n or after January 1, 2028, only reusable or refillable propane cylinders shall be sold or offered for sale in [California]." [15] Section 42395(a) of the California Public Resources Code provides that:

For the purposes of this chapter, "reusable" or "refillable" or "reuse" or "refill," in regard to propane cylinders means a cylinder that satisfies all of the following:

(1) Explicitly designed and marketed to be utilized multiple times for the same product.

(2) Designed for durability to function properly in its original condition for multiple uses.

(3) Supported by adequate infrastructure to ensure the cylinders can be conveniently and safety reused for multiple cycles.

Section 42395(b) further states that "[f]or the purposes of this chapter, 'propane cylinder' does not include any of the following:

(1) Cylinders that are customarily designed for use in the construction industry and when full, contain less than 15 ounces of fuel, whether filled solely with propane or not.

(2) Cylinders that have an overall product height-to-width of 3.55 to 1 or greater.

(3) Cylinders that are offered to a State or local government purchasing agency pursuant to the United States General Services Administration's State and Local Disaster Purchasing Program, or a successor program.

The State Department of Resources Recycling and Recovery is required to "adopt regulations to implement [the law] with an effective date of January 1, 2028." [16]

## IV. Public Comments

PHMSA received a total of seventeen comments responding to Worthington's application for an administrative preemption determination on the California reusability mandate for propane cylinders. Nine commenters expressed their support for the application, and eight commenters expressed their opposition. Additional information about the comments is provided below.

### *A. Comments Supporting Preemption*

Goal and Purpose of HMTA

Nearly all commenters in favor of preemption argue that California's reusability mandate for propane cylinders obstructs the purpose of the HMTA. The National Propane Gas Association (NPGA), a national trade organization representing the propane industry, states that the California reusability mandate would disrupt national uniformity and undermine safety.[17] Noting that the purpose of the HMTA is to create one set of rules for transportation, safety, equipment, and operations, NPGA observes that differing State requirements for propane cylinders undermine that purpose by creating a patchwork of manufacturing and safety standards.[18] NPGA further states that the refillable propane cylinders required by the California reusability mandate do not yet have an established safety and operational record comparable to DOT–39 cylinders.[19]

Cleveland-Cliffs Inc., a producer of flat-rolled steel in North America and a supplier of steel used by U.S. manufacturers of non-reusable propane cylinders, argues that the California reusability mandate undermines national standards for the use and regulation of propane cylinders that have been established through industry guidance and practice.[20] Cleveland-Cliffs notes that the HMR explicitly allow non-refillable propane cylinders, and echoes NPGA's claim that the California reusability mandate requires the use of refillable propane cylinders that do not have the same established safety and operations record as DOT–39 cylinders.[21]

A group of nonprofit organizations dedicated to wildlife conservation (collectively known as Wildlife Conservation Organizations) argue that DOT–39 propane cylinders are the national standard "because they are safe, convenient, and affordable," particularly for outdoor recreationists.[22] The Wildlife Conservation Organizations further state that imposing a State-specific design requirement "disrupts national uniformity, increases safety hazard potential, and places burdens on commerce," frustrating the purpose of a uniform regulatory framework as intended by the HMTA.[23] The Wildlife Conservation Organizations note that "[m]any of their members recreate in multiple states," and that the requirements in the California reusability mandate "w[ould] create confusion and practical compliance challenges" for the rest of the country.[24]

The Attorneys General of Kansas and Ohio argue that "[t]he [HMTA] ensures safe packaging and transportation of hazardous materials." [25] The State Attorneys General emphasize that "uniformity and certainty matter" because "packaging, transporting, and using compressed gas is dangerous." [26] They argue that the California reusability mandate is an obstacle to promoting the HMTA's objectives of promoting safety and minimizing burdens on commerce by prohibiting "the sale of safe, *tried-and-true* propane cylinders." [27] The State Attorneys General assert that reusable or refillable cylinders can be dangerous for untrained consumers who may inadvertently overfill the cylinders, use worn or damaged cylinders, cause leaks, or transport cylinders unsafely.[28] They argue that it is important for consumers, including those from out of State, to "have the opportunity to buy safe and reliable single-use cylinder[s]." [29] They also argue manufacturers will be forced

[12] 49 CFR 107.209(c).

[13] E.O. 13132, *Federalism,* 64 FR 43255 (Aug. 10, 1999); *Memorandum on Preemption,* 74 FR 24693 (May 22, 2009).

[14] 74 FR at 24693.

[15] Cal. Pub. Res. Code § 42395.1.

[16] Cal. Pub. Res. Code § 42395.2. *See also* 2024 Cal. Legis. Serv. Ch. 466 (S.B. 1280).

[17] National Propane Gas Association (NPGA), Comment, Docket ID PHMSA–2025–0776–0004 (Feb. 6, 2026).

[18] *Id.* at 2.

[19] *Id.* at 1.

[20] Cleveland-Cliffs Inc., Comment, Docket ID PHMSA–2025–0776–0009 (Feb. 6, 2026).

[21] *See id.*

[22] Wildlife Conservation Organizations, Comment, Docket ID PHMSA–2025–0776–0001 at 1 (Feb. 9, 2026).

[23] *Id.* at 2.

[24] *Id.*

[25] Attorneys General of Kansas & Ohio, Comment, Docket ID PHMSA–2025–0776–0008 at 1 (Feb. 6, 2026).

[26] *Id.*

[27] *Id.* at 2.

[28] *Id.*

[29] *Id.*

to ''shift significant resources'' to continue operating in the market, which will drive up costs and cause further economic harm.[30] The International Association of Machinists and Aerospace Workers Union (IAM), District 10, also emphasize that the California reusability mandate presents an obstacle to maintaining compliance with the national hazmat transportation regulatory scheme.[31] Requiring a unique product to be used in California places an unreasonable burden on commerce.

Not Substantively the Same

The Attorneys General of Kansas and Ohio argue that the California reusability mandate must be preempted because it is about the designing and manufacturing of propane cylinders and requires that the cylinders at issue be designed and manufactured to California's specifications, *i.e.,* the cylinders must be reusable or refillable.[32] By having its own design and manufacturing requirements, the California reusability mandate is in conflict with 49 U.S.C. 5125(b)(1)(E). IAM, District 10, also claims the California reusability mandate is preempted as pertaining to a covered subject area, *i.e.,* the designing, manufacturing, and fabricating of a container used to transport hazardous materials, and requiring a different cylinder design than one authorized by the HMTA to be sold or offered for sale in California.[33] The Wildlife Conservation Organizations similarly argue that California is imposing a State-specific design mandate that is not substantially the same as Federal requirements.[34] They note that California is mandating a different product design than what is otherwise allowed in every other State.[35]

Economic Burdens

Several commenters argue that the California reusability mandate would impose unreasonable economic burdens on commerce. In a joint comment, the State Attorneys General of Kansas and Ohio note that single-use cylinders have been manufactured in Kansas for decades and that Ohio-based Worthington Enterprises is the only American manufacturer of DOT–39 cylinders.[36] They argue that the California reusability mandate threatens jobs, impedes commerce, creates confusion for manufacturers and for retailers, and undermines affordability and safety for all consumers.[37] Relatedly, NPGA claims that compliance with a patchwork of different State requirements would be costly and confusing for propane companies operating interstate.[38]

Cleveland-Cliffs notes that the current market for non-reusable propane cylinders is served entirely by domestically produced steel, whereas refillable cylinders are currently made overseas with foreign materials, raising both economic and safety concerns.[39] IAM, District 10, a union representing workers in a manufacturing facility where non-refillable propane cylinders are produced, notes that 255 workers are employed at that facility.[40] They argue that if California's ban on nonreusable cylinders goes into effect, it will reduce consumer demand for those products and likely reduce the need for those jobs.[41] In addition, the Wildlife Conservation Organizations argue that from a consumer standpoint, reusable or refillable cylinder alternatives can impose significantly higher costs and may require users to transport larger tanks or travel long distances to locate a refill retailer, placing significant burdens on backcountry and remote-use activities.[42]

*B. Comments Opposing Preemption*

Regulates Waste Management, Not Hazmat Transportation

Most of the comments opposing preemption emphasize that the California reusability mandate relates to waste management and public safety, matters falling within the reach of the State's traditional police powers. Solid Waste Association of North America (SWANA), an advocacy organization focused on the advancement of solid waste management to resource management, argues that the reusability requirement advances waste management worker and facility safety and reduces the amount of waste and disposal costs associated with single-use cylinders.[43] SWANA elaborates that improperly discarded propane cylinders are a safety risk.[44] Single-use cylinders that enter collection vehicles or processing facilities ''can retain residual gas or pressure and may explode when compacted, crushed, or otherwise handled during normal waste management operations.''[45] SWANA asserts that such incidents endanger workers and increase costs on local governments and waste management facility operators through insurance, maintenance, and repairs.[46] SWANA cites a September 23, 2024 press release from California State Senator John Laird, author of California Senate Bill 1280 (SB 1280), from which Cal. Pub. Res. Code §§ 42395–42395.2 is codified.[47] In the press release, Senator Laird explained the law was enacted for a ''cleaner and safer California,'' due to the burden of improperly disposed cylinders on park systems, beaches, waste management facilities, and local governments.[48]

The California Product Stewardship Council (CPSC) and Rural County Representatives of California (RCRC), in a joint comment, argue that the California reusability mandate is a waste management law that falls within the State's traditional police powers.[49] Citing to the President's May 20, 2009 Memorandum on Preemption and E.O. No. 13132, CPSC and RCRC argue that PHMSA should limit the impact its preemption determination would have on California's exercise of its police powers to address issues outside the scope of the HMTA, *i.e.,* waste management, product stewardship, and environmental protection.[50] Echoing arguments made by SWANA, CPSC and RCRC state that the California reusability mandate addresses waste management challenges associated with single-use propane cylinders, primarily the disposal of single-use cylinders that are landfilled or illegally dumped and rarely properly recycled due to residual gas and infrastructure gaps, and that are known to cause fires, explosions, and injuries at waste handling facilities.[51]

[30] *Id.*

[31] International Association of Machinists and Aerospace Workers (IAM), District 10, Comment, Docket ID PHMSA–2025–0776–0010 at 1 (Jan. 21, 2026).

[32] Attorneys General of Kansas & Ohio, Comment, Docket ID PHMSA–2025–0776–0008 at 2.

[33] IAM, District 10, Comment, Docket ID PHMSA–2025–0776–0010 at 1.

[34] Wildlife Conservation Organizations, Comment, Docket ID PHMSA–2025–0776–0001 at 1.

[35] *Id.*

[36] Attorneys General of Kansas & Ohio, Comment, Docket ID PHMSA–2025–0776–0008 at 1.

[37] *Id.*

[38] NPGA, Comment, Docket ID PHMSA–2025–0776–0004 at 2.

[39] Cleveland-Cliffs Inc., Comment, Docket ID PHMSA–2025–0776–0009.

[40] IAM, District 10, Comment, Docket ID PHMSA–2025–0776–0010 at 1.

[41] *Id.*

[42] Wildlife Conservation Organizations, Comment, Docket ID PHMSA–2025–0776–0001 at 1.

[43] Solid Waste Association of North America (SWANA), Comment, Docket ID PHMSA–2025–0776–0005 at 2 (Feb. 9, 2026).

[44] *Id.*

[45] *Id.* at 3.

[46] *Id.*

[47] *Id.* at 2.

[48] *Id.*

[49] Cal. Prod. Stewardship Council (CPSC) & Rural Cnty. Representatives of Cal. (RCRC), Comment, Docket ID PHMSA–2025–0776–0012 at 1 (Feb. 6, 2026).

[50] *Id.* at 1–2.

[51] *Id.* at 2.

They argue that California enacted the reusability mandate after legislative findings showing the risks to sanitation workers and firefighters, the ineffectiveness of voluntary recycling programs, and the lack of Federal action addressing the harms associated with improper disposal of non-reusable propane cylinders.[52] CPSC and RCRC urge PHMSA to consider California's legitimate interests in addressing a waste management problem and avoid a preemption determination undermining California's "legitimate exercise of its police powers."[53]

*Does Not Present an Obstacle to the HMTA*

The majority of commenters opposing preemption argue that the California reusability mandate does not present an obstacle to carrying out the HMTA. SWANA argues California's reusability requirement is not an obstacle so long as the refillable cylinders meet DOT standards.[54] SWANA notes that there is precedent for the use of refillable propane cylinders, such as 20-pound refillable cylinders used for barbeques.[55] SWANA also argues that "other states have laws that support refillable cylinders, such as Connecticut's [Extended Producer Responsibility] law for gas cylinders (Public Act No. 24–133)," though does not elaborate in what manner Connecticut had done so.[56]

CPSC and RCRC argue that the California reusability mandate does not create an obstacle to Federal laws regarding the transportation of hazardous materials, specifying that the law does not prohibit propane use, does not interfere with Federal transportation or handling requirements, and does not require the redesign of cylinders already compliant with Federal law.[57] They assert that DOT–39 cylinders may still be transported in commerce in California for sale to consumers in other States, thus "avoiding any impact on interstate commerce."[58] Special Waste Associates (SWA), who provides consulting services to local and State governments about managing household hazardous waste, asserts that the California reusability mandate is not an obstacle to the HMTA because other manufacturers have sold small refillable propane cylinders for consumer use.[59] SWA further asserts that Worthington has the ability to manufacture refillable one-pound propane cylinders and has simply "chosen not to do so."[60]

Does Not Pertain to a Covered Subject

The majority of the commenters opposed to preemption also argue that the California reusability mandate does not pertain to a covered subject and therefore is not required to be "substantively the same as" a provision of the HMTA or the HMR. SWANA claims that the "substantively the same" provision relates to transportation, and that the California reusability mandate "does not speak to the transportation of . . . cylinders."[61] CPSC and RCRC argue SB 1280 is not a safety standard regulating the design, manufacture, fabrication, inspection, marking, maintenance, reconditioning, repairing, or testing of packagings or containers that are represented, marked, certified, or sold as qualified for use in transporting hazmat.[62] They also argue that the California reusability mandate does not impose new design specifications or transportation requirements on propane cylinders or prohibits the use of propane.[63] Instead, they claim that the reusability mandate relies upon cylinder specifications already established by DOT; specifically, the DOT 4BA specification for reusable and refillable welded or brazed steel cylinders.[64] They argue that even if the California reusability mandate relates to the design, manufacture, or fabrication of containers used to transport hazmat, its "implicit reliance" on the DOT 4BA cylinder specification means that it is complementary to, and thus "substantively the same as," Federal hazardous material transportation law and regulations.[65]

SWA further argues California's law is not preempted because propane cylinders are not a "packaging" under the HMR.[66] SWA claims the one-pound cylinders are instead the "product being contained in the packaging," and that the box used to ship the cylinder was the "packaging."[67] SWA further asserts the outer packaging must conform with the HMR's packaging requirements, "not the materials inside the packaging."[68]

Dual Compliance Is Possible

CPSC and RCRC argue that the California reusability mandate does not make compliance with both State and Federal law impossible, and noted that reusable DOT 4BA cylinders would be permitted.[69] They also argue that the reusability mandate does not prohibit the manufacturing of single-use cylinders; it merely prohibits their sale to consumers in California.[70]

*C. Rebuttal Comments*

Rebuttal Comments in Support of Preemption

The rebuttal comments in favor of preemption largely echo those submitted during the initial comment period. In a joint letter, Representatives Troy Balderson, Ron Estes, and Tony Wied express concern that the California reusability mandate threatens manufacturing jobs in their States and argue that domestic manufacturers of cylinders rely on a uniform regulatory framework to produce safe cylinders.[71] They note that millions of Americans use non-refillable propane cylinders in emergency situations and for outdoor activities.[72] They argue the California reusability mandate reduces safety by creating a haphazard and inconsistent regulatory environment, noting that DOT–39 cylinders are the national standard for portable fuel and have been rigorously designed and tested.[73]

California Grocers Association (CGA), a nonprofit statewide trade association for the grocery and retail industry in California, agrees that the California reusability mandate is an obstacle to maintaining compliance with a uniform scheme of Federal regulation meant to promote safety and will impose an unreasonable burden on commerce.[74] CGA estimates that managing a California-specific distribution for propane cylinders would cost California grocers millions of dollars.[75] CGA also argues the California reusability mandate should be preempted under the covered subject provision in the HMTA,

[52] *Id.* at 3.

[53] *Id.* at 4.

[54] SWANA, Comment, Docket ID PHMSA–2025–0776–0005 at 2.

[55] *Id.*

[56] *Id.*

[57] CPSC & RCRC, Comment, Docket ID PHMSA–2025–0776–0012 at 2–3.

[58] *Id.* at 3.

[59] Special Waste Associates (SWA), Comment, Docket ID PHMSA–2025–0776–0011 at 2 (Feb. 9, 2026).

[60] *Id.*

[61] SWANA, Comment, Docket ID PHMSA–2025–0776–0005 at 2.

[62] CPSC & RCRC, Comment, Docket ID PHMSA–2025–0776–0012 at 1.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] SWA, Comment, Docket ID PHMSA–2025–0776–0011 at 2.

[67] *Id.*

[68] *Id.*

[69] CPSC & RCRC, Comment, Docket ID PHMSA–2025–0776–0012 at 2–3.

[70] *Id.*

[71] Reps. Balderson, Estes, & Wied, Comment, Docket ID PHMSA–2025–0776–0015 (Feb. 27, 2026).

[72] *Id.* at 1.

[73] *Id.* at 1–2.

[74] California Grocers Association (CGA), Comment, Docket ID PHMSA–2025–0776–0014 (Feb. 19, 2026).

[75] *Id.* at 1.

because the HMR authorizes non-refillable propane cylinders, and the reusability mandate will prevent its members from transporting non-refillable propane cylinders to consumers despite being ''available to all other consumers in the U.S.'' [76]

James Hunter Poole, Executive Chairman and Chief Executive Officer of Obelisk Tech Systems, Inc., argues the California reusability mandate should be preempted on economic grounds because imposing disproportionate burdens on small propane cylinder manufacturers as well as consumers in rural households, who rely on single-use propane cylinders as a primary emergency energy source in natural disasters.[77] Mr. Poole reasons that small rural propane distributors would be forced to increase costs as a result of California pulling out of the market, and that fragmenting the national market would reduce availability during natural disasters.[78] Mr. Poole asserts the California reusability mandate will obstruct the HMTA's purpose of national uniformity.[79] He elaborates that a manufacturer supplying propane cylinders must either manufacture two different cylinder types, one for California and one for the rest of the country, ''creating exactly the non-uniform patchwork the HMTA was designed to prevent.'' [80] Alternatively, those manufacturers must redesign their product lines to meet California's requirements, imposing California's policy preferences on the entire market.[81] In response to previous commenters, Mr. Poole notes that while California's concern about waste and disposable are legitimate environmental objectives, they are not hazardous materials transportation safety objectives.[82]

Worthington, in its rebuttal, agrees with commenters expressing support for preemption and argues that those comments confirm that preemption is both legally appropriate and in the public interest by ensuring the free flow of commerce, preserving jobs, advancing safety, and protecting consumer choice and affordability.[83] Worthington argues that opposition commenters cannot support their view because the California reusability mandate clearly imposes design requirements and HMTA preemption encompasses restrictions on containers holding hazmat, such as cylinders, not just the outer packaging or the transportation of hazmat.[84] Worthington asserts that the California reusability mandate is ''not complementary to the uniform regulatory scheme'' and that the federalism concerns raised by other commenters do not apply because there is no presumption against preemption where the statute contains an express preemption clause, such as in the HMTA.[85]

Worthington reiterates that the HMTA preempts California's non-reusable cylinder ban because it pertains to an enumerated subject matter in 49 U.S.C. 5125(b)(1) and 49 CFR 107.202(a)(5)—specifically, the designing, manufacturing, fabricating, etc. of a packaging, container, or packaging component—and is not substantively the same as the Federal requirements.[86] Contrary to the assertions of CPSC and RCRC, Worthington argues that the California reusability mandate imposes design specifications on propane cylinders, as it defines cylinders that are reusable or refillable as those ''explicitly designed and marketed to be utilized multiple times for the same product.'' [87] Worthington further argues that CPSC and RCRC misunderstand the HMTA's preemption provision in stating that the reusability mandate does not regulate the design or manufacture of propane cylinders because it does not prohibit propane use and does not impose specific requirements as to cylinder pressure, valves, or materials.[88] Worthington states that a law prohibiting propane use has no bearing on whether it imposes a propane cylinder design requirement, and a regulation imposing a legal duty of reusability imposes a design requirement because it bars the selection of a federally approved cylinder design.[89]

Worthington further argues that HMTA preemption is not limited to outer ''packaging,'' as suggested by some of the commenters, because it is about the design or manufacture of a package, container, or packaging component used for transporting hazmat, and that DOT–39 cylinders are containers with specific regulatory requirements.[90] Rejecting CAW and SWANA's assertions that preemption only applies to State requirements related to transportation, Worthington claims the covered subject provision about designing and manufacturing containers does not require a particular connection to transportation, only that such containers are qualified for use in transporting hazmat, which includes DOT–39 cylinders.[91] Worthington further asserts that California's reusability mandate is not complementary to Federal law because mandating a specific cylinder design to the exclusion of others ''is not substantively the same as a provision permitting that design among other designs,'' as there is no Federal provision requiring cylinders to be reusable such as DOT 4BA cylinders.[92]

Worthington emphasizes that California's reusability mandate creates an obstacle to the HMTA and HMR's objectives to ''promote uniformity of hazmat regulation, safety, and cost-effective commerce.'' [93] Further, preemption is in the public interest because it would promote uniform regulatory standards that are safer, ensure consumer choice and affordability, and promote American jobs and industry.[94] Worthington expresses skepticism that waste management and environmental concerns would be addressed by the reusability mandate, claiming that enhanced recycling programs and infrastructure are more appropriate methods.[95] Worthington reasons that consumers have indicated a preference for nonreusable cylinders for affordability and convenience.[96] If forced to buy a reusable or refillable cylinder, consumers are just as likely to purchase a new one instead of refilling an existing one.[97]

Worthington notes consumers have expressed discomfort with refillable options, citing to a presentation at the 2025 U.S. Product Stewardship Forum in which Little Kamper, a company operating a cylinder exchange program, reported at most a 60 percent exchange rate at their best performing retail location.[98] Worthington further argues that California's reusability mandate disregards safety because DOT–39 cylinders have to meet certain regulatory standards and testing, whereas reusable one-pound cylinders

[76] *Id.* at 2.

[77] Obelisk Tech Systems, Inc., Comment, Docket ID PHMSA–2025–0776–0016 at Doc. 9, 11, & 12 (Mar. 10, 2026).

[78] *Id.*

[79] *Id.* at Doc. 9.

[80] *Id.*

[81] *Id.*

[82] *Id.* at Doc. 10.

[83] Worthington Enterprises, Inc., Comment, Docket ID PHMSA–2025–0776–0018 at 1 (Mar. 10, 2026).

[84] *Id.* at 2.

[85] *Id.*

[86] *Id.*

[87] *Id.* at 3 (quoting Cal. Pub. Res. Code § 42395).

[88] *Id.*

[89] *Id.*

[90] *Id.* at 3–5.

[91] *Id.*

[92] *Id.* at 6–7.

[93] *Id.* at 5.

[94] *Id.* at 7–8.

[95] *Id.* at 8.

[96] *Id.*

[97] *Id.*

[98] *Id.*

on the market encourage untrained consumers to refill using unregulated fill kits.[99] Worthington states that banning a safe type of cylinder does not promote safety in the waste stream because every type of propane cylinder bears the same risks, and the safety threat to consumers refilling cylinders themselves and not requalifying cylinders at appropriate intervals outweighs the risks to safety in the waste stream.[100]

Rebuttal Comments Opposed to Preemption

The rebuttal comments opposed to preemption mostly reiterate points made during the initial comment period. Californians Against Waste (CAW), a statewide nonprofit organization representing local governments, waste management professionals and recyclers, and environmental advocates, emphasizes that the reusability mandate is a waste prevention and product stewardship statute that falls within California's traditional police powers.[101] CAW asserts the mandate addresses the sale of a product that is uniquely hazardous once discarded, posing an explosion and fire risk in waste management operations.[102] It argues Congress had preserved State authority in the areas of waste prevention, product stewardship, and post-consumer safety and that nothing in the HMTA ''evidences an intent to displace State action addressing downstream environmental and infrastructure harms.'' [103] CAW also asserts California's reusability requirement does not present an obstacle to the HMTA because the reusability requirement did not interfere with the HMTA's safety objectives or undermine national uniformity, did not restrict the transportation of propane, prohibit authorized cylinder designs from being shipped in interstate commerce, or impose conflicting operational requirements on carriers.[104] CAW reiterates SWA's claim that the one-pound propane cylinders are ''the product'' and not packaging as regulated under the HMR, and that the outer packaging is regulated by PHMSA as a packaging, not the cylinders themselves.[105]

Billy Puk, a former hazmat and waste regulator and an illegal waste dumping investigator in California, similarly argues that it is within California's traditional police powers to manage waste and public safety.[106] Mr. Puk claims that improper propane cylinder disposal is a crisis, with only 25 percent of such cylinders recovered through household hazardous waste programs and are instead regularly commingled with municipal waste, where they can cause flash fires and explosions from being compacted or at waste facilities.[107] He asserts SB 1280 is not preempted as an obstacle to the HMTA because numerous manufacturers already produce DOT specification one-pound refillable cylinders, and that California should be permitted to choose between existing federally approved cylinders ''to solve a local waste and safety crisis.'' [108]

The Attorney General of California, in rebuttal, argues the California reusability mandate protects public safety, particularly workers in municipal waste and recycling facilities from the dangers of improperly disposed propane cylinders, and thus falls within California's traditional police powers and is entitled to a presumption against preemption.[109] Referencing SWANA's comment, the California Attorney General notes that, while California State law requires propane cylinders to be disposed of as hazardous waste, an estimated three to four million end up in municipal landfills not certified to receive hazardous waste, and those cylinders contain residual gas and may explode when damaged or crushed during disposal or recycling.[110] The California Attorney General further asserts that, even when properly disposed, the processes required for safe handling of non-refillable propane cylinders impose significant costs on local facilities, and the reusability mandate addresses these safety and cost issues.[111] The California Attorney General also argues that, in all preemption cases, it is presumed that the ''historic police powers of the State'' are not supplanted by Federal law ''unless that was the clear and manifest purpose of Congress.'' [112] The California Attorney General asserts that because a primary purpose in enacting SB 1280 was to protect landfill workers, PHMSA should ''incorporate the presumption against a finding of preemption'' for California's propane cylinder reusability mandate as falling within California's historic police powers.[113]

The California Attorney General rejects the contention that the reusability mandate is not substantively the same as comparable Federal requirements.[114] Assuming that cylinders are a ''package'' under the HMTA, and therefore that any State requirement regarding their ''designing, manufacturing, fabricating. . . . or testing'' must be substantively the same, the California Attorney General asserts there are no requirements in the California mandate that are not substantively the same as those under the HMR.[115] The California Attorney General states that the HMR specifies cylinder designs in 49 CFR part 178, which includes non-refillable cylinders, but the regulations do not prohibit the design of refillable or reusable cylinders.[116] Rather, the HMR provides that cylinders may be designed for repeated use.[117] The California Attorney General notes that DOT–4BA reusable cylinders are authorized for propane and that there are numerous one-pound reusable cylinder options for sale as well as refill kits at major retailers.[118]

The California Attorney General further argues there is no preemption under the obstacle test because the reusability mandate does not present an obstacle to accomplishing and carrying out the HMTA or the HMR.[119] The California Attorney General elaborates that the HMTA's purpose is to promote safety in hazardous materials transportation through uniform regulation, and that the reusability mandate does not create an obstacle to that purpose, but rather furthers an interest in safety by reducing the number of improperly disposed propane cylinders in municipal landfills.[120] The California Attorney General argues that, while some commenters raised concerns about the effect of the mandate on jobs, commerce, and consumer costs, none of those concerns relate to the safe transportation of hazmat.[121] The California Attorney General also argues there is no preemption under the dual compliance test because the HMR authorizes reusable cylinders and does not require propane cylinders to be

[99] *Id.* at 9.

[100] *Id.*

[101] Californians Against Waste (CAW), Comment, Docket ID PHMSA–2025–0776–0013 at 1 (Feb. 9, 2026).

[102] *Id.*

[103] *Id.* at 2.

[104] *Id.*

[105] *Id.*

[106] Billy Puk, Comment, Docket ID PHMSA–2025–0776–0017 at 1 (Mar. 10, 2026).

[107] *Id.* at 1–2.

[108] *Id.* at 4.

[109] Attorney General of California, Comment, Docket ID PHMSA–2025–0776–0019 at 1 (Mar. 10, 2026).

[110] *Id.* at 2.

[111] *Id.* at 3.

[112] *Id.* at 4 (quoting *Wyeth* v. *Levine,* 555 U.S. 555, 565 (2009)).

[113] *Id.*

[114] *Id.* at 5.

[115] *Id*

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 6.

[120] *Id.*

[121] *Id.*

nonreusable, and thus it is not impossible to comply with both the reusability mandate and the HMR.[122]

**V. Discussion**

PHMSA finds that California's reusability mandate for propane cylinders is preempted. The mandate concerns the ''designing, manufacturing, fabricating, inspecting, marking, [or] maintaining'' of a packaging or container used in the transportation of hazardous materials in commerce and is not ''substantively the same'' as the Federal regulations. In addition, California's reusability mandate is also an obstacle to accomplishing and carrying out the HMTA and the HMR. Accordingly, the reusability mandate is preempted under 49 U.S.C. 5125(a)(2) and (b)(1)(E).

*A. Covered Subject Preemption*

Section 5125(b)(1) generally provides that a non-Federal requirement concerning certain covered subjects is preempted if that non-Federal requirement is not ''substantively the same'' as a regulation prescribed in the HMR.[123] The California reusability mandate falls squarely within the reach of this provision for two reasons. First, the mandate is a non-Federal requirement that relates to a covered subject, *i.e.,* the designing, manufacturing, fabricating, inspecting, marking, and maintaining of propane cylinders, which are packagings or containers qualified for use in transporting hazardous materials in commerce. Second, the mandate imposes non-Federal requirements on propane cylinders that are not substantively the same as the requirements in the HMR, which expressly authorize DOT–39 cylinders to be designed and manufactured as single-use, *i.e.,* as ''*non-reusable (non-refillable),*'' packagings or containers. The California reusability mandate is therefore preempted under section 5125(b)(1)(E).

At to the first issue, the California reusability mandate clearly relates to a covered subject. The HMR prescribes detailed requirements for the design and manufacture of specification cylinders generally and DOT–39 specification cylinders specifically.[124] The general requirements for specification cylinders include provisions for construction and fabrication standards, safety device standards, marking requirements, and certification and inspection requirements. Moreover, the specific requirements for DOT–39 cylinders include provisions for size, service pressure, and test pressure; authorized materials; manufacturing standards; minimum wall thickness standards; openings and attachments; testing and inspection requirements; and required markings.[125]

Of particular significance for the issues presented here, the HMR expressly authorizes DOT–39 cylinders to be designed, manufactured, and fabricated as non-reusable (non-refillable) propane cylinders. That is confirmed by the general requirements in the HMR for specification cylinders, which have a specific provision for inspecting non-refillable cylinders,[126] and by the specific requirements in the HMR for ''Specification 39 *non-refillable (non-reusable)* cylinders.''[127] Indeed, the latter requirements expressly forbid the use of refillable DOT–39 cylinders and require that such cylinders be marked with the following statement: ''Federal law forbids transportation if refilled-penalty up to $500,000 fine and 5 years imprisonment (49 U.S.C. 5124).''[128]

As to the second issue, the California reusability mandate clearly imposes requirements that are not substantively the same as the HMR. The HMR expressly authorizes the design, manufacture, and fabrication of non-refillable (non-reusable) cylinders as packagings or containers qualified for use in transporting propane in commerce. The HMR also expressly forbids the use in transportation of DOT–39 cylinders that are refilled with propane. The California reusability mandate is not substantively the same as these requirements; indeed, it is in direct conflict with them. Further, the mandate imposes additional inspection, marking, and maintenance requirements, given that DOT–39 cylinder have different inspection and marking requirements from refillable cylinders, and reusable cylinders must be requalified at specific intervals for continued use.[129] As such, the mandate is preempted under the covered subject provision in Section 5125(b)(1)(E).

The contrary arguments presented by the commenters are unpersuasive. As a threshold matter, the preemption provision in the HMTA is not limited to State requirements directly relating to the transportation of packagings or containers for hazardous materials. The provision applies to a packaging or container qualified for the use in transporting hazardous materials, regardless of whether it is in ''transportation.''[130] Nor does the California reusability mandate enjoy a presumption against preemption as a waste management statute enacted pursuant to the State's traditional police powers. There is no presumption against preemption when a statute contains an express preemption clause, such as in the HMTA.[131]

Section 5125(b)(1) of the HMTA is an express preemption clause ''because it 'expressly directs that State law be ousted' if certain conditions are satisfied.''[132] As noted by the Third Circuit in *Roth,* Section 5125(b)(1) is ''an expansive preemption provision,'' and there was ''nothing in the HTMA'' to indicate Congress did not intend to preempt State requirements about the covered subjects listed within.[133] Rather, the HMTA's preemption provision was ''the linchpin of Congress' efforts to impose nationwide regulatory uniformity.''[134] Congress's

[122] *Id.*

[123] 49 U.S.C. 5125(b)(1)(E).

[124] *See* 49 CFR 178.35; 178.65.

[125] *See* 49 CFR 178.65.

[126] 49 CFR 178.35(c)(3).

[127] 49 CFR 178.65 (italics added).

[128] 49 CFR 178.65(i)(2)(ii) & (i)(2)(viii).

[129] *See* 49 CFR 178.35(c)(3) (inspection requirements for DOT–39 cylinders); § 178.65(i)(2)(viii) (marking requirements for DOT–39 cylinders); *see also* § 180.205 (general requirements for requalification of specification cylinders).

[130] *Applicability of the Hazardous Materials Regulations to Loading, Unloading, and Storage,* 68 FR 61906, 61908 (Oct. 30, 2003). In this final rule, PHMSA emphasized that the DOT or UN specification markings on packagings qualified for use in transportation of hazardous materials in commerce ''certify that the packaging has been designed, tested, and maintained in conformance with all applicable HMR requirements,'' and that the requirements of the HMR apply regardless of ''whether or not [the packaging] is in transportation in commerce at any particular time.'' *See also Roth* v. *Norfalco LLC,* 651 F.3d. 367, 379–80 (3d Cir. 2011) (finding Section 5125(b)(1) ''expressly preempts'' differing requirements about the ''design'' of a tank car qualified for use in transporting hazardous materials even when the tank car was not in transportation under the HMTA or HMR).

[131] *See Buono* v. *Tyco Fire Products, LP,* 78 F.4th 490, 495 (2d Cir. 2023) (citing *Puerto Rico* v. *Franklin Cal. Tax-Free Tr.,* 579 U.S. 115, 125 (2016)). In *Buono,* the Second Circuit Court of Appeals broadly interpreted the statutory language, emphasizing that ''[t]he HMTA expressly preempts nonfederal laws 'about' certain subjects related to the transportation of hazardous materials in commerce.'' *Id.* at 493.

[132] *Id.* at 496 (citing *Association of Int'l Auto. Mfrs.* v. *Abrams,* 84 F.3d 602, 607 (2d. Cir. 1996)). The ''plain wording of the clause'' is the ''best evidence of Congress' preemptive intent.'' *Id.* at 495 (citing *Chamber of Com. of U.S.* v. *Whiting,* 563 U.S. 582, 594 (2011)).

[133] *Roth,* 651 F.3d at 376, 378–80. The Third Circuit stressed the breadth of the preemption provision: ''It is obvious from the face of the statute that § 5125(b)(1) expressly preempts non-federal requirements that relate to, or are 'about,' the five subject areas set forth in § 5125(b)(1)(A)–(E).'' *Id.* at 375.

[134] *Id.* at 378 (citing *Harmon,* 951 F.2d at 1581). *Cf. Monsanto Company* v. *Durnell,* 146 S. Ct. 2001, 2009–12 (2026) (holding that the Federal Insecticide, Fungicide, and Rodenticide Act

Continued

preemptive intent of the HMTA is obvious from the plain language of Section 5125(b)(1), as well as in the Federal hazardous materials transportation law's legislative history.[135]

California's Attorney General asserts that the reusability requirement for propane cylinders is substantively the same as the HMR, specifying that the HMR does not prohibit the design of refillable or reusable cylinders, and that other DOT specification cylinders that are refillable or reusable, such as DOT 4BA cylinders, have been authorized for transporting propane. PHMSA disagrees with this assertion. While the HMR does permit the design of refillable or reusable cylinders, it also expressly permits single-use, non-refillable cylinders. California seeks to impose design and manufacturing requirements, namely that they must be reusable and refillable, for all propane cylinders offered for sale with few exceptions, which is not substantively the same as the HMR. On its face, California's mandate may only reasonably be interpreted to impose design and manufacturing requirements on packagings or containers, particularly, DOT–39 cylinders, that are qualified for use in transporting hazmat in commerce.[136]

In conclusion, a non-Federal requirement is not ''substantively the same'' unless it ''conforms in every significant aspect to the Federal requirement.'' [137] Accordingly, California's law imposes additional, different requirements regarding the design and manufacture of cylinders qualified for use in the transportation of propane, a hazardous material. Thus, California's reusability requirement for propane cylinders is preempted under 49 U.S.C. 5125(b)(1)(E).

*B. Obstacle Preemption*

Section 5125(a)(2) generally provides that a non-Federal requirement is preempted if complying with that requirement ''is an obstacle to accomplishing and carrying out'' the HMTA or ''a regulation prescribed under'' the HMTA.[138] California's reusability mandate is a non-Federal requirement that satisfies the obstacle criteria laid out in this provision. It is therefore preempted under 49 U.S.C. 5125(a)(2).

In enacting the HMTA, Congress made findings relating to the transportation of hazardous materials and the importance of uniform regulations governing hazmat transportation.[139] Congress noted many States and localities had enacted laws and regulations that varied from Federal law relating to hazmat transportation, creating the potential for unreasonable hazards in other jurisdictions and confusion for shippers and carriers attempting to comply with multiple and conflicting regulatory requirements.[140] Further, because of the potential risks associated with unintentional releases of hazardous materials, Congress found that consistency in laws and regulations governing hazmat transportation was ''necessary and desirable,'' and that Federal standards regulating hazmat transportation in intrastate, interstate, and foreign commerce were necessary to ''achieve greater uniformity and to promote the public health, welfare, and safety at all levels.'' [141]

As previously noted, a non-Federal requirement is preempted if it is an obstacle to accomplishing the ''goals and purposes'' of the HMTA.[142] And the HMTA's goal of regulatory uniformity in the transportation of hazardous materials is undermined when State and local governments impose requirements that conflict with activities that are otherwise authorized under Federal law, such as by functionally banning the use of DOT–39 cylinders for propane. State and local requirements that restrict or delay the transportation of hazardous materials in accordance with Federal requirements are inconsistent with the HMTA and the HMR.[143]

PHMSA has prescribed extensive regulations governing the safe transportation of hazardous materials, including propane, as well as the specifications of packagings authorized for use in the transportation of propane, along with requirements for the safe use and maintenance of those packagings. Each type of cylinder authorized for hazmat transportation has specific design, manufacturing, testing, and maintenance requirements that ensure it is safe for use, including DOT–39 cylinders. Specification 39 cylinders are subject to strict manufacturing standards and must undergo rigorous testing in order to be qualified for use in transporting hazardous materials.[144] Moreover, the DOT–39 cylinder has been an approved DOT cylinder specification for the transportation of propane for years. PHMSA continually reviews and updates requirements for DOT–39 cylinders, along with all other types of approved hazmat packagings, through rulemakings, and has done so as recently as 2020.[145] In short, PHMSA has established a comprehensive regulatory scheme addressing the safety of DOT–39 cylinders and their suitability in transporting hazardous materials such as propane. A State requirement forbidding the sale of such authorized hazardous materials packagings is an obstacle to the accomplishment and execution of the objectives of the HMTA and HMR.

Accordingly, California's reusability mandate for propane cylinders undermines the HMTA's goal and purpose of uniformity and is the type of patchwork State requirement Congress

(FIRFA)'s preemption clause entitled ''Uniformity'' expressly preempted State-law labeling requirements, such as cancer warning labels not required by EPA, that were different from the Federal labeling requirements under FIRFA based on the ''textually stated objective of'' uniformity in labeling in FIRFA's preemption clause).

[135] *See* Public Law 101–615, 104 Stat. 3244, 3247–49 (1990); H.R. Rep. No. 101–444, pt. 1, at 33–35 (1990). In amending the HMTA in 1990, the House of Representatives Committee on Energy and Commerce found ''there is a compelling need for standardized requirements relating to certain areas of the transportation of hazardous materials. Conflicting Federal, State, and local requirements pose potentially serious threats to the safe transportation of hazardous materials.'' H.R. Rep. No. 101–444, pt. 1, at 33–34. The Committee specified that one such area concerned the ''[d]esign, manufacturing, marking, maintenance, reconditioning, repairing, or testing of hazardous materials packaging,'' noting that ''[c]onflicting requirements'' may reduce the effectiveness of such packagings and impose ''needless economic burdens.'' *Id.* at 35. As a result of the Committee's findings that uniformity in the ''designing, manufacturing, and testing'' of hazardous materials packages and containers ''will enhance the safe transportation of hazardous materials,'' Congress amended the Federal hazardous materials transportation law to include the ''substantively the same'' preemption standard. *See* Public Law 101–615, 104 Stat. at 3247–49.

[136] As explained *supra,* the HMR authorize DOT–39 cylinders as qualified packagings for use in the transportation of propane in commerce. *See* 49 CFR 173.301(a).

[137] 49 CFR 107.202(d).

[138] 49 U.S.C. 5125(a)(2).

[139] *Harmon,* 951 F.2d at 1580.

[140] *Id.* (citing Pub. L. 101–615, 104 Stat. at 3245).

[141] *Id.*

[142] *Id.*

[143] *See Southern Pac. Transp. Co.* v. *Public Service Comm'n of Nevada,* 909 F.2d 352, 358 (9th Cir. 1990) (finding additional State shipping documentation and permitting requirements for hazmat transportation created a ''separate regulatory regime'' that frustrated Congress's goal of regulatory uniformity and were both burdensome and redundant). Further, such hazmat transportation is presumptively safe, and additional State or local requirements on areas covered by Federal law or regulation ''are neither necessary nor appropriate.'' *See* Preemption Determination No. PD–40(R), FR 29511, 29526 (May 15, 2020). *See generally,* Preemption Determination No. PD–6(R), 59 FR 6186 (Feb. 9, 1994); Preemption Determination No. PD–7(R), 59 FR 28913 (June 3, 1994), decision on appeal, 60 FR 10419 (Feb. 24, 1995); Inconsistency Ruling (IR)–8, 49 FR 46637 (Nov. 27, 1984), decision on appeal, 52 FR 13000 (Apr. 20, 1987); IR–19, 52 FR 24404 (June 30, 1987), decision on appeal, 53 FR 11600, affirmed in IR–19(A) and *Southern Pac. Transp. Co.,* 909 F.2d 352 (reversing No.CV–N–86–444–BRT (D. Nev. 1988)).

[144] *See* 49 CFR 178.65.

[145] *See Miscellaneous Amendments Pertaining to DOT-Specification Cylinders,* 85 FR 85380 (Dec. 28, 2020).

sought to avoid through the HMTA. California's mandate sets a precedent for other jurisdictions to ban or place impermissible restrictions on approved hazmat packagings under the guise of waste management. These conflicting requirements would undermine the Federal regulatory scheme of hazardous materials transportation uniformity and create confusion and uncertainty for manufacturers and offerors of such packagings and the hazmat contained therein. Allowing one State to ban the sale of non-reusable or non-refillable propane cylinders would impose an unreasonable burden on manufacturers and shippers by requiring them to redesign their product to meet a specific State's requirements, or pull out of that market entirely. It would also impose an unreasonable burden on consumers by removing a safe and affordable option for transporting propane.

More importantly, California's reusability mandate would more than likely have the unintended effect of creating additional safety hazards for consumers, further frustrating the intent of the HMTA and HMR. Filling cylinders with propane, a flammable gas, poses a safety risk, and that risk is increased if untrained consumers attempt to refill these propane cylinders themselves. The refillable cylinders, such as the DOT 4BA cylinders, touted by those opposed to preemption must also be inspected and retested at regular intervals to qualify for reuse.[146] Though some consumers may timely reinspect and retest their smaller propane cylinders, it is likely that many would keep using their cylinders past the requalifying date, creating an additional safety hazard. And while proponents of California's law insist the reusability requirement would keep smaller propane cylinders from being disposed of improperly at waste management facilities or landfills, reusable propane cylinders may still be discarded improperly, creating the same risks from improper disposal that California's law purports to solve.

For these reasons, PHMSA finds California's reusability mandate for most propane cylinders is an obstacle to carrying out the HMTA and HMR's goal of uniformity in the regulation of hazardous materials and impedes the transportation of hazardous materials. The mandate is therefore preempted under 49 U.S.C. 5125(a)(2).

## VI. Ruling

PHMSA finds that California's reusability mandate for propane cylinders is a non-Federal requirement relating to a covered subject that is not substantively the same as the requirements in the HMR. PHMSA further finds that California's reusability mandate is an obstacle to accomplishing and carrying out the HMTA and HMR. Accordingly, California's reusability mandate for propane cylinders is preempted under 49 U.S.C. 5125(b)(1)(E) and (a)(2).

## VII. Petition for Reconsideration/Judicial Review

In accordance with 49 CFR 107.211(a), any person aggrieved by this determination may file a petition for reconsideration. The petition for reconsideration must be filed within 20 days of publication of this determination in the **Federal Register**. If a petition for reconsideration is filed within 20 days of publication in the **Federal Register**, the decision by PHMSA's Chief Counsel on the petition for reconsideration becomes PHMSA's final agency action with respect to the person requesting reconsideration.[147]

If a person does not request reconsideration in a timely fashion, then this determination is PHMSA's final agency action as to that person, as of the date of publication in the **Federal Register**.

Any person who is adversely affected or aggrieved by this administrative determination may seek judicial review under 49 U.S.C. 5127(a) by filing a petition for review in an appropriate United States Court of Appeals within 60 days after publication of this determination in the **Federal Register**.[148] The filing of a petition for reconsideration is not a prerequisite to seeking judicial review of this decision under 49 U.S.C. 5127(a).

Issued in Washington, DC, on September 7, 2026.

**Keith J. Coyle,**

*Chief Counsel.*

[FR Doc. 2026–18501 Filed 9–9–26; 8:45 am]

BILLING CODE 4910–60–P

[146] *See* 49 CFR 180.209.

[147] *See* 49 CFR 107.211(d).

[148] *See* 49 U.S.C. 5127(a).

# DEPARTMENT OF THE TREASURY

## Internal Revenue Service

## Art Advisory Panel—Notice of Closed Meeting

**AGENCY:** Internal Revenue Service, Treasury.

**ACTION:** Notice of closed meeting of Art Advisory Panel.

**SUMMARY:** Closed meeting of the Art Advisory Panel will be held in New York, NY or virtually via Microsoft Teams. The entire meeting will be closed.

**DATES:** The meeting will begin at 10:00 a.m. Eastern Time. The meeting will be held September 16, 2026.

**ADDRESSES:** The closed meeting of the Art Advisory Panel will be held at 290 Broadway—Foley Square New York, NY 10007–1823 or virtually via *Microsoft Teams.*

**FOR FURTHER INFORMATION CONTACT:** Valeria B. Farr, 1835 Assembly Street, Columbia, SC 29201. Telephone (803) 312–7828 (not a toll-free number).

**SUPPLEMENTARY INFORMATION:** Notice is hereby given pursuant to section 10(a)(2) of the Federal Advisory Committee Act, 5 U.S.C. 1009, that a closed meeting of the Art Advisory Panel will be held at 290 Broadway—Foley Square, New York, NY 10007 or virtually via *Microsoft Teams.*

The agenda will consist of the review and evaluation of the acceptability of fair market value appraisals of works of art involved in Federal income, estate, or gift tax returns. This will involve the discussion of material in individual tax returns made confidential by the provisions of 26 U.S.C. 6103.

A determination as required by section 10(d) of the Federal Advisory Committee Act has been made that this meeting is concerned with matters listed in sections 552b(c)(3), (4), (6), and (7), of the Government in the Sunshine Act, and that the meeting will not be open to the public.

**Spencer W. Clark,**

*Committee Management Officer, US Department of the Treasury.*

[FR Doc. 2026–18483 Filed 9–9–26; 8:45 am]

BILLING CODE 4830–01–P

# DEPARTMENT OF VETERANS AFFAIRS

**[OMB Control No. 2900–0205]**

## Agency Information Collection Activity Under OMB Review: Title 38 Health Care Positions—Trainee Application and Appraisal

**AGENCY:** Veterans Health Administration, Department of Veterans Affairs.

**ACTION:** Notice.

**SUMMARY:** In compliance with the Paperwork Reduction Act (PRA) of 1995, this notice announces that the Veterans Health Administration (VHA), Department of Veterans Affairs (VA),

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October, 2026, the foregoing Petition for Review and attachment were served on Respondents by sending a copy via certified mail, return receipt requested, to each of the following addresses:

Paul J. Roberti
Administrator
U.S. Department of Transportation
Pipeline and Hazardous Materials
Safety Administration
1200 New Jersey Avenue, SE
Washington, D.C. 20590

Samantha Vrscak
Office of Chief Counsel
U.S. Department of Transportation
Pipeline and Hazardous Materials
Safety Administration
1200 New Jersey Avenue, SE
Washington, D.C. 20590

Sean Duffy
Secretary of Transportation
U.S. Department of Transportation
Pipeline and Hazardous Materials
Safety Administration
1200 New Jersey Avenue, SE
Washington, D.C. 20590

Todd Blanche
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530-0001

Patrick J. Kennedy
Worthington Enterprises, Inc.
200 Old Wilson Bridge Rd.
Columbus, OH 43085

Dated: October 29, 2026

*s/ Rafael J. Hurtado*
RAFAEL J. HURTADO